ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**

| | | |
|---|---|---|
| **COREY REBECCA CRUZ WATSON**<br>DEMANDANTE(S)-RECURRIDA(S)<br><br>V.<br><br>**ALBERTO CORRETJER REYES**<br>DEMANDADA(S)-PETICIONARIA(S) | **KLCE202400851** | ***Certiorari***<br>procedente del Tribunal de Primera Instancia, Sala Superior de **SAN JUAN**<br><br>Caso Núm.<br>**K DI2016-0176** (702)<br><br>Sobre:<br>Divorcio (Custodia) |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Pagán Ocasio y la Juez Barresi Ramos.

*Barresi Ramos,* juez ponente

# SENTENCIA

En San Juan, Puerto Rico, hoy día 27 de noviembre de 2024.

Comparece ante este Tribunal de Apelaciones, el señor **ALBERTO CORRETJER REYES** (señor **CORRETJER REYES**) mediante *Petición de Certiorari* interpuesta el 2 de agosto de 2024. En su recurso, nos solicita que revisemos: (1) la *Orden* decretada el 25 de abril de 2024 por el Tribunal de Primera Instancia (TPI), Sala Superior de San Juan.[1] Mediante la referida decisión, se impuso una sanción de $350.00 a favor de la señora **COREY REBECCA CRUZ WATSON** (señora **CRUZ WATSON**) a pagarse dentro del plazo de diez (10) días; se le prohibió hablarle o permitir a terceros hablar a la menor ANCC sobre algún viaje hasta tanto la señora **CRUZ WATSON** o el Tribunal haya autorizado, so pena de sanciones. Además, (2) la *Orden* dirigida a la Unidad Social dictada el 29 de abril de 2024, requiriendo realizar un estudio social sobre custodia monoparental y de ser necesario coordinar evaluaciones psicológicas y psiquiátricas.

---

[1] Este dictamen judicial fue notificado y archivado en autos el 25 de abril de 2024. Apéndice de la *Petición de Certiorari*, págs. 1a- 1.

Número Identificador: SEN2024_____

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

- I -

El 11 de febrero de 2016, la señora CRUZ WATSON incoó una *Demanda* sobre divorcio por la causal de ruptura irreparable. Al poco tiempo, el 7 de marzo de 2016, el señor CORRETJER REYES presentó su *Contestación a Demanda y Reconvención.* Así las cosas, el 29 de marzo de 2016, mediante *Sentencia* quedó disuelto el vínculo matrimonial entre las partes y se decretó la *custodia compartida provisional* sobre su hija menor de edad ANCC.[2]

Posteriormente, el 14 de abril de 2016, la señora CRUZ WATSON interpeló autorización para relocalizarse junto a la menor ANCC a North Carolina, Estados Unidos de América. Como parte de los procedimientos, se ordenó a la Unidad Social de Relaciones de Familia realizar un estudio o evaluación social sobre *custodia* y relocalización.

Luego de varios trámites procesales, el 10 de febrero de 2017, la trabajadora social CARMEN E. CRUZ NARVÁEZ (trabajadora social CRUZ NARVÁEZ), de la Unidad Social de Relaciones de Familia, rindió el *Informe Social Forense (Informe).*[3] En dicho *Informe,* se recomendó no autorizar la relocalización de la menor ANCC y la *custodia* continuara compartida **condicionada a terapia familiar**.

En desacuerdo con la recomendación contenida en el *Informe,* la señora CRUZ WATSON anunció su intención de impugnarlo. Dicho procedimiento sobre impugnación se extendió desde diciembre de 2017 hasta junio de 2018, y requirió la celebración de unas veintidós (22) audiencias evidenciarias. El 4 de enero de 2019, se dictaminó *Resolución* en la cual se consignaron cuatrocientos noventa y dos (492) determinaciones de hechos; se declaró *no ha lugar* la solicitud de relocalización de la señora CRUZ WATSON; se otorgó la *custodia compartida;* y se dispuso un plan filial.[4]

---

[2] Apéndice de la *Petición de Certiorari,* págs. 104-108.
[3] *Íd.,* págs. 109-151.
[4] *Íd.,* 21-103.

El 25 de agosto de 2016, la señora **Cruz Watson** suplicó se expidiera una *Orden de Protección Ex Parte,* bajo el número de caso OPA-2016-054520, ante la Sala Municipal de San Juan. Ulteriormente, el 20 de septiembre de 2016, se determinó *Resolución Denegando Orden de Protección* declarando no ha lugar el petitorio de orden de protección bajo la Ley Núm. 54 de 15 de agosto de 1989, según enmendada, mejor conocida como *Ley para la Prevención e Intervención con la Violencia Doméstica.*[5] Ello por no haberse probado los elementos constitutivos de violencia doméstica.

Más tarde, el 24 de agosto de 2020, la señora **CRUZ WATSON** obtuvo una *Orden de Protección Ex Parte,* en el caso número SJL2046-2020-0313, imputándole conducta inapropiada al señor **CORRETJER REYES** para con su hija ANCC.[6] Celebradas varias audiencias, el 21 de septiembre de 2020, se emitió *Resolución* dejando sin efecto la *Orden de Protección Ex Parte* y ordenando el archivo del caso número SJL2046-2020-0313.[7] En adición, requirió a las partes conjuntamente a escoger un profesional de la conducta para que evaluara a la menor ANCC para determinar la raíz de su conducta atípica.

Después, el 11 de mayo de 2021, la trabajadora social MARÍA DENIZ ORTIZ DÍAZ (trabajadora social ORTIZ DÍAZ) proveyó su *Informe Pericial de Evaluación de Alegaciones de Abuso Sexual* en el cual concluyó que la menor ANCC no ofreció información sobre algún evento de abuso sexual; y el caso no reúne los criterios necesarios para sostenerse como uno de abuso sexual.[8] Asimismo, que la conducta observada por la señora **CRUZ WATSON** era producto de su etapa de desarrollo.

A pesar de dicho informe, y con la oposición del señor **CORRETJER REYES**, se impuso a la Unidad Social realizar otra evaluación sobre *custodia compartida* y enajenación parental. El 29 de octubre de 2021, la trabajadora

---

[5] Apéndice de la *Petición de Certiorari,* págs. 361- 362.
[6] *Íd.,* págs. 363- 366.
[7] *Íd.,* págs. 367- 387.
[8] *Íd.,* págs. 155- 199.

social ELIZABETH LITSKY COLLAZO (trabajadora social LITSKY COLLAZO) rindió su *Informe Social Forense* en el cual recomendó mantener la *custodia compartida* (50-50) y las partes **iniciaran un proceso de Coordinación de Parentalidad.**[9] Insatisfecha, la señora CRUZ WATSON comenzó un proceso de impugnación de ambos informes.

El 7 de marzo de 2022, la señora CRUZ WATSON presentó una *Urgentísima Solicitud de Acción Protectora al Amparo de la Ley 246 de Seguridad, Protección y Bienestar de la Niñez.* Ese mismo día, se dispuso *Orden* denegando la solicitud de orden de protección presentada por la señora CRUZ WATSON; se refirió a la Unidad de Investigaciones Especializadas del Departamento de la Familia para investigación; y se atendió en la audiencia pautada para el 6 de abril de 2022.[10]

Consecutivamente, celebradas múltiples audiencias, en febrero de 2023, los señores CRUZ WATSON y CORRETJER REYES llegaron a un acuerdo de mantener la *custodia compartida* (50-50), con un cambio en los días de intercambio de 2-2-3 a 2-2-5-5.[11] También acordaron que en o antes del 15 de enero de 2024 o doce (12) meses aproximadamente, la DOCTORA RÖSCHEN M. UNDERWOOD, PSY.D, MA (DRA. UNDERWOOD) evaluaría la posibilidad de cambiar el plan filial a semanas alternas. En adición, las partes estipularon el plan filial durante el período de verano; navidad y otros días festivos. Del mismo modo, se aprestó que cualquier salida de Puerto Rico requeriría la autorización de ambos progenitores y se descartaron las recomendaciones contenidas en el *Informe Social Forense* de la Unidad Social de Relaciones de Familia, así como aquellas de la trabajadora social ORTIZ DÍAZ que no hayan sido acogidas con la anuencia de las partes.

El 18 de abril de 2023, se pronunció *Resolución* declarando con lugar la solicitud del señor CORRETJER REYES de que se les requiera **contratar un**

---

[9] Apéndice de la *Petición de Certiorari*, págs. 203- 222.
[10] *Íd.*, págs. 388- 389.
[11] *Íd.*, págs. 239- 240.

**coordinador de parentalidad.**[12] Igualmente, se les requirió a las partes informar el coordinador seleccionado o de no haber acuerdo, sugerir tres (3) alternativas para el Tribunal seleccionar uno. Dicho coordinador deberá ser costeado en partes iguales.

Llegado el tiempo, en febrero de 2024, la DOCTORA UNDERWOOD se comunicó, vía telefónica, con el señor CORRETJER REYES para constatar cómo se encontraba la menor ANCC, y si se había adaptado o no a su nuevo itinerario de *custodia compartida*. Ante el hecho de que la menor ANCC se encontraba perfectamente bien, no existía razón alguna para exponerla a los riesgos de una nueva evaluación de *custodia* o cambio de itinerario se comprometió a notificar al tribunal.

El 14 de febrero de 2024, se expidió *Resolución* en la cual se reiteró que cualquier salida de Puerto Rico, que no sea visitar familia materna en North Carolina, requiere la autorización de ambos progenitores o en su defecto, del Tribunal.[13] Apercibió que adquirir pasajes previos a obtener el consentimiento trae el riesgo de perder el dinero gastado, así como que las actuaciones enajenantes o que interfieran con relación del otro progenitor y la menor ANCC justificaría un cambio de *custodia*.

Para el mes de marzo de 2024, el señor CORRETJER REYES comenzó los preparativos para coordinar un viaje familiar a Londres e Italia junto a su hija menor ANCC y los abuelos paternos. El 13 de marzo, el 17 de marzo y el 2 de abril de 2024, el señor CORRETJER REYES remitió varios correos electrónicos a la señora CRUZ WATSON solicitándole autorización para el viaje durante el periodo de vacaciones de verano.[14] Dichos correos electrónicos **no** fueron contestados por la señora CRUZ WATSON.

---

[12] Apéndice de la *Petición de Certiorari*, págs. 263- 264. La señora CRUZ WATSON se opuso al petitorio de contratar un coordinador de parentalidad por entender que no procede dado que el Tribunal no ha hecho una determinación clara en torno a la causa del problema de comunicación. No surge del expediente que las partes hayan cumplido con lo requerido o el Tribunal haya designado algún coordinador de parentalidad.
[13] *Íd.*, págs. 265- 266.
[14] *Íd.*, págs. 267- 269 y 286- 299.

El 5 de abril de 2024, la señora CRUZ WATSON presentó *Urgente Moción en Solicitud de Cambio de Custodia ante Reiterado Patrón de Maltrato Emocional* pidiendo nuevamente la *custodia* monoparental de la menor ANCC.[15] Por ello, el 8 de abril de 2024, el señor CORRETJER REYES presentó *Moción Urgente de Autorización de Viaje y Réplica a Solicitud de Cambio de Custodia y Moción Reiterando Solicitud de Coordinador de Parentalidad".*[16] El 9 de abril de 2024, la señora CRUZ WATSON presentó *Réplica a Autorización de Viaje.*[17] Entonces, el 16 de abril de 2024, el señor CORRETJER REYES presentó *Moción en Cumplimiento de Orden* acompañada de la información del viaje.[18]

Luego de un breve término, el 23 de abril de 2024, la señora CRUZ WATSON compareció mediante *Moción en Cumplimiento y Reiterando Solicitud de Remedios* en la cual expresó sentirse "obligada, presionada y manipulada a tener que autorizar el viaje pues la menor sabe del viaje" y reclamó, entre otras cosas, que al señor CORRETJER REYES le fueran impuestas severas sanciones por comprar los pasajes de la menor ANCC sin autorización.[19]

Finalmente, el 25 de abril de 2024, se intimó la primera *Orden* recurrida. Inconforme, el 29 de abril de 2024, el señor CORRETJER REYES presentó *Moción de Reconsideración.*[20] Ese día, se prescribió la segunda *Orden* impugnada. El 3 de julio de 2024, se dictaminó *Orden* declarando no ha lugar la solicitud de reconsideración.[21]

---

[15] Apéndice de la *Petición de Certiorari*, págs. 270- 300.

[16] *Íd.*, págs. 302- 311 y 312-315, respectivamente. Empero, el 3 de abril de 2024, la señora CRUZ WATSON, por medio de su representación legal, cursó un correo electrónico a la representación legal del señor CORRETJER REYES requiriendo que se le supliera: (1) documento completo de itinerario que contenga los nombres de los que viajaran junto a la menor ANCC; en específico el itinerario que contenga el nombre de la menor ANCC como pasajera; y (2) evidencia acreditativa de la fecha en que se compraron los pasajes y se hicieron las reservaciones de los hoteles que se mencionan en el correo electrónico enviado el 2 de abril de 2024.

[17] Apéndice de la *Petición de Certiorari*, págs. 316- 322.

[18] *Íd.*, págs. 324- 336.

[19] *Íd.*, págs. 337- 339.

[20] *Íd.*, págs. 2- 8.

[21] *Íd.*, págs. 20a- 20.

Ante ello, el 2 de agosto de 2024, el señor **CORRETJER REYES** recurrió ante este foro revisor intermedio. En su petitorio, señala el(los) siguiente(s) error(es):

> Erró el TPI al ordenar a la Unidad Social de Relaciones de Familia y Asuntos de Menores realizar un estudio social sobre custodia monoparental.
>
> Erró el TPI al denegar hacer valer su orden a las partes de asistir a un coordinador de parentalidad.
>
> Erró el TPI al prohibir a Corretjer hablarle, o permitir que terceros le hablen a ANCC de ningún viaje hasta tanto, ya sea la madre o el Tribunal, lo haya autorizado.
>
> Erró el TPI al imponer a Corretjer la sanción de $350.00.

El 16 de agosto de 2024, pronunciamos *Resolución* concediendo, entre otras cosas, un término de diez (10) días a la señora **CRUZ WATSON** para exponer su posición sobre el recurso. Luego de una breve prórroga, el 5 de septiembre de 2024, la señora **CRUZ WATSON** presentó su *Alegato en Oposición*.

Evaluado concienzudamente el expediente del caso, y contando con el beneficio de la comparecencia de ambas partes, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a la(s) controversia(s) planteada(s).

- II -

- A - *Certiorari*

El auto de *certiorari* es un vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda revisar discrecionalmente las órdenes o resoluciones interlocutorias decretadas por una corte de inferior instancia judicial.[22] Por ello, la determinación de expedir o denegar este tipo de recurso se encuentra enmarcada dentro de la discreción judicial.[23]

De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[24]

---

[22] *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021).
[23] *Íd.*
[24] *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016).

Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho".[25]

Ahora bien, en los procesos civiles, la expedición de un auto de *certiorari* se encuentra delimitada a las instancias y excepciones contenidas en la Regla 52.1 de las de Procedimiento Civil de 2009.[26] La mencionada Regla dispone que solo se expedirá un recurso de *certiorari* cuando, "se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57 o de la denegatoria de una moción de carácter dispositivo".[27] En ese sentido, y a manera de excepción, se podrá expedir este auto discrecional cuando:

> (1) se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales;
> (2) en asuntos relacionados a privilegios evidenciarios;
> (3) en casos de anotaciones de rebeldía;
> (4) en casos de relaciones de familia;
> (5) en casos revestidos de interés público; o
> (6) en cualquier situación en la que esperar a una apelación constituiría un fracaso irremediable de la justicia.[28]

Lo anterior constituye tan solo la primera parte de nuestro análisis sobre la procedencia de un recurso de *certiorari* para revisar un dictamen del Tribunal de Primera Instancia. De modo que, aun cuando un asunto esté comprendido entre las materias que las Reglas de Procedimiento Civil de 2009 nos autorizan a revisar, el ejercicio prudente de esta facultad nos requiere tomar en consideración, además, los criterios dispuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones (Reglamento).[29]

Por otro lado, el examen de los [recursos] discrecionales no se da en el vacío o en ausencia de otros parámetros.[30] Para ello, la Regla 40 de nuestro Reglamento instituye los indicadores a considerar al evaluar si se debe o no expedir un recurso de *certiorari*. A saber:

---

[25] *Íd.*
[26] 32 LPRA Ap. V, R. 52.1; *Torres González v. Zaragoza Meléndez, supra.*
[27] *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021).
[28] 4 LPRA Ap. XXII-B, R. 40; *Torres González v. Zaragoza Meléndez, supra; McNeil Healthcare v. Mun. Las Piedras I, supra,* pág. 404; *800 Ponce de León v. AIG,* 205 DPR 163 (2020).
[29] *McNeil Healthcare v. Mun. Las Piedras I, supra,* pág. 404; *800 Ponce de León v. AIG, supra.*
[30] *Íd.*

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho;
(B) Si la situación de hechos planteada es la más indicada para el análisis del problema;
(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia;
(D) Si el asunto planteado exige una consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados;
(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración;
(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio; y
(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[31]

Es preciso aclarar, que la anterior no constituye una lista exhaustiva, y ninguno de estos criterios es determinante, por sí solo, para justificar el ejercicio de nuestra jurisdicción.[32] En otras palabras, los anteriores criterios nos sirven de guía para poder determinar de la forma más sabia y prudente si se justifica nuestra intervención en la etapa del procedimiento en que se encuentra el caso.[33] Ello, pues distinto al recurso de apelación, este Tribunal posee discreción para expedir el auto de *certiorari*. La delimitación que imponen estas disposiciones reglamentarias tiene "como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación."[34]

Finalmente, este Tribunal solo intervendrá con las determinaciones interlocutorias discrecionales procesales del tribunal sentenciador cuando este último haya incurrido en un craso abuso de discreción.[35] Esto es, "que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial".[36]

---

[31] 4 LPRA Ap. XXII-B, R. 40; *Torres González v. Zaragoza Meléndez, supra; Rivera Figueroa v. Joe´s European Shop*, 183 DPR 580 (2011).
[32] *García v. Padró*, 165 DPR 324, 335 esc. 15 (2005).
[33] *Mun. Caguas v. JRO Construction, Inc.*, 201 DPR 703, 712 (2019).
[34] *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478, 486- 487 (2019); *Mun. Caguas v. JRO Construction Inc., supra*.
[35] *García v. Asociación*, 165 DPR 311, 322 (2005).
[36] *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

## - B - *Custodia*

En nuestra jurisdicción, la *custodia* se refiere a la "tenencia física del menor" y se les permite a ambos progenitores compartirla.[37] El Artículo 602 del Código Civil de Puerto Rico de 2020 define la *custodia compartida* como:[38]

> "la obligación de ambos progenitores de ejercer directa y totalmente todos los deberes y funciones que conlleva la patria potestad de los hijos, relacionándose con estos mayor tiempo posible y brindándoles la compañía y atención que se espera del progenitor responsable.
> La custodia compartida no requiere que el menor pernocte el mismo tiempo en la residencia de ambos progenitores. En este caso, el tribunal puede conceder la custodia compartida de los hijos menores de edad o de hijos mayores de edad de los que comparten la patria potestad prorrogada, si el otro progenitor se relaciona de forma amplia y desempeña responsablemente todas las funciones que como progenitor le corresponden y la patria potestad le impone".

Ahora bien, al realizar una determinación, el tribunal deberá justipreciar los siguientes preceptos, sin incorporar ninguna presunción a favor o en contra de la *custodia compartida* o la exclusiva (conocida como monoparental):[39]

> a) la salud mental de ambos progenitores y de los hijos;
> b) el nivel de responsabilidad o integridad moral exhibido por cada uno de los progenitores;
> c) si ha habido un historial de violencia doméstica entre los integrantes del núcleo familiar;
> d) la capacidad de cada progenitor para satisfacer las necesidades afectivas, económicas y morales del menor, tanto presentes como futuras;
> e) el historial de cada progenitor en la relación con sus hijos;
> f) las necesidades específicas de cada uno de los hijos menores cuya custodia se solicita;
> g) la relación del hijo con sus progenitores, sus hermanos y otros miembros de la familia;
> h) la capacidad, disponibilidad y compromiso de los progenitores de asumir la responsabilidad de criar los hijos conjuntamente;
> i) la razón o los motivos de los progenitores para solicitar la custodia compartida;
> j) si la profesión u oficio que ejercen los progenitores no es un impedimento para ejercer una custodia compartida;
> k) si la ubicación y distancia entre las residencias de los progenitores perjudica la educación del hijo;
> l) la comunicación que existe entre los progenitores y la capacidad para comunicarse mediante comunicación directa o utilizando mecanismos alternos; y

---

[37] Código Civil Año 2020 Comentado (en adelante, "Memorial Explicativo"), pág. 591. Los artículos sobre *custodia* fueron copiados de la *Ley Protectora de los Derechos de los Menores en el Proceso de Adjudicación de Custodia*, Ley Núm. 223-2011.
[38] 31 LPRA § 7281.
[39] Memorial Explicativo, pág. 585.

m) cualquier otro criterio que pueda considerarse para garantizar el interés óptimo de los hijos.[40]

Ello implica que el tribunal referirá el caso a la Unidad Social de Relaciones de Familia a los fines de que sea asignado a un(a) trabajador(a) social quien realizará una evaluación y rendirá un informe. Dicho informe contendrá un historial (familiar; académico y ocupacional; vivienda; salud física y salud mental); los hallazgos y las recomendaciones al Tribunal. Empero, el Tribunal siempre tendrá discreción judicial para la determinación y adjudicación de *custodia*. Ello siempre protegiendo los mejores intereses y el bienestar (ahora interés optimo) de los menores.

En otra orden de cosas, el Artículo 605 del Código Civil de Puerto Rico de 2020 implanta los criterios que podrán impedir la adjudicación de la *custodia compartida*:[41]

> (a) cuando uno de los progenitores sufre de una incapacidad o deficiencia mental, según determinada por un profesional de la salud, y la misma es de naturaleza irreversible y de tal magnitud que le impide atender adecuadamente a los hijos y garantizar la seguridad e integridad física, mental y emocional de estos; (b) cuando los actos u omisiones de uno de los progenitores resultan perjudiciales a los hijos o constituyen un patrón de ejemplos corruptores;
> (c) cuando uno de los progenitores, su cónyuge o pareja consensual ha sido convicto por actos constitutivos de maltrato de menores;
> (d) cuando uno de los progenitores se encuentra confinado en una institución carcelaria;
> (e) cuando uno de los progenitores ha sido convicto por actos constitutivos de violencia doméstica;
> (f) cuando uno de los progenitores ha cometido abuso sexual o cualquiera de los delitos sexuales tipificados en el Código Penal de Puerto Rico hacia algún menor;
> y (g) cuando uno de los progenitores, su cónyuge o pareja consensual es adicto a drogas ilegales o a alcohol.

Más aún, el Código Civil de Puerto Rico de 2020, en su Artículo 605, enuncia cuando se concederá la *custodia exclusiva* (monoparental):[42]

> La custodia del hijo, acompañada o no del ejercicio exclusivo de la patria potestad, puede asignarse a un solo progenitor:
> a) mientras se ventila el proceso de divorcio o de nulidad de matrimonio;
> b) luego de decretada la disolución o anulado el matrimonio; o

---

[40] Artículo 604 del Código Civil de Puerto Rico de 2020, 31 LPRA § 7283.
[41] 31 LPRA § 7284.
[42] 31 LPRA § 7285.

c) **cuando hay diferencias irreconciliables o reiteradas entre los progenitores que afectan significativamente la crianza razonada, responsable y efectiva del hijo.**

En estos casos no puede entorpecerse o prohibirse el contacto con el otro progenitor con su hijo, aunque puede regularse en las circunstancias y del modo que autoriza este Código. (Énfasis nuestro).

## - C - *Regla 39.2(a) de las de Procedimiento Civil de 2009*

La Regla 39.2(a) de las de Procedimiento Civil de 2009 instaura que, si la parte demandante deja de cumplir con las Reglas o con cualquier orden del tribunal, este podrá, a iniciativa propia o a solicitud de la parte demandada, decretar la *desestimación* del pleito o de cualquier reclamación contra él, o la eliminación de las alegaciones, según corresponda.[43] En lo pertinente, la precitada Regla 39.2(a) expresa:

> Cuando se trate de un primer incumplimiento, la severa sanción de la desestimación de la demanda o la eliminación de las alegaciones tan solo procederá después que el tribunal, en primer término, haya apercibido al abogado o abogada de la parte de la situación y se le haya concedido la oportunidad para responder. Si el abogado o abogada de la parte no responde a tal apercibimiento, el tribunal procederá a imponer sanciones al abogado o abogada de la parte y se notificará directamente a la parte sobre la situación. Luego de que la parte haya sido debidamente informada o apercibida de la situación y de las consecuencias que pueda tener el que la misma no sea corregida, el tribunal podrá ordenar la desestimación del pleito o la eliminación de las alegaciones. El tribunal concederá a la parte un término de tiempo razonable para corregir la situación que en ningún caso será menor de treinta (30) días, a menos que las circunstancias del caso justifiquen que se reduzca el término.

En el caso *Maldonado v. Srio. de Rec. Naturales*, el Tribunal Supremo hizo las siguientes expresiones:

> No hay duda de que los tribunales tienen el poder discrecional, bajo las Reglas de Procedimiento Civil, de desestimar una demanda o eliminar las alegaciones de una parte; ese proceder, sin embargo, se debe ejercer juiciosa y apropiadamente.
> Planteada ante un tribunal una situación que, de acuerdo con la ley y la jurisprudencia aplicables, amerita la imposición de sanciones, éste debe, en primer término, imponer las mismas al abogado de la parte. Si dicha acción disciplinaria no produce frutos positivos, procederá la imposición de la severa sanción de la desestimación de la demanda o la eliminación de las

---

[43] 32 LPRA Ap. V, R. 39.2(a). Nuestra jurisprudencia ha resuelto que las Reglas de Procedimiento Civil de 2009 contienen dos (2) disposiciones que facultan a los tribunales a imponer sanciones ante el incumplimiento de las órdenes por las partes. A saber, la Regla 34.3 (b)(3) de las de Procedimiento Civil de 2009 instituye los incumplimientos con las órdenes concernientes al descubrimiento de prueba; en tanto, la Regla 39.2(a) de las de Procedimiento Civil de 2009 instaura sobre el incumplimiento de órdenes de cualquier naturaleza. *HRS Erase v. CMT*, 205 DPR 689, 711 (2020).

alegaciones, tan solo después que la parte haya sido debidamente informada y/o apercibida de la situación y de las consecuencias que puede tener el que la misma no sea corregida. La experiencia señala que en la gran mayoría de los casos que presentan esta clase de dificultades -el presente caso es un ejemplo de ello- las partes no están enteradas de la actuación negligente de sus abogados y, al advenir en conocimiento de ello, la situación es corregida de inmediato. Una parte que haya sido informada y apercibida de esta clase de situación y no tome acción correctiva, nunca se podrá querellar, ante ningún foro, de que se le despojó injustificadamente de su causa de acción y/o defensas.[44]

En suma, la norma claramente establecida es, primero, amonestar al(a la) abogado(a) y darle una oportunidad para corregir; y segundo, sancionar al(a la) abogado(a) y notificarle directamente a la parte sobre la situación, concediéndole un término razonable para corregir la misma, así como apercibiéndole que de no corregir en treinta (30) días se podrá desestimar la reclamación. Ello, dado que se debe dar cumplimiento a la política judicial imperante, por un lado, de que los casos se ventilen en sus méritos y, por otro lado, de que estos se resuelvan de forma justa, rápida y económica.[45] Indubitablemente, la *desestimación* es la sanción más drástica que puede imponer un tribunal ante la dilación en el trámite de un caso debido a que tiene el efecto de una adjudicación en sus méritos a la cual le será de aplicación la doctrina de cosa juzgada.[46] Por ende, solo debe recurrirse a ella en casos extremos para desestimar o eliminar las alegaciones.[47]

## - III -

En el presente caso, se recurre de dos (2) *Ordenes* post sentencia en un caso de relaciones de familia. Por ello, concluimos que la etapa de los procedimientos en que se presenta el recurso es la más propicia para su consideración. Con ello, se cumple con al menos uno de los criterios necesarios para mover nuestra discreción a favor de la expedición del auto solicitado.

---

[44] 113 DPR 494, 498 (1982).
[45] *Amaro González v. First Fed. Savs.*, 132 DPR 1042, 1052 (1993).
[46] *Sánchez Rodríguez v. Adm. de Corrección*, 177 DPR 714, 720 (2009).
[47] *HRS Erase v. CMT, supra*.

En su primer señalamiento de error, el señor CORRETJER REYES nos solicita, en síntesis, que determinemos si actuó correctamente el foro primario al disponer referir para evaluación la solicitud de custodia monoparental presentada por la señora CRUZ WATSON. Toda vez que el único fundamento utilizado para ello fueron los correos electrónicos cursados a la señora CRUZ WATSON solicitando su autorización para un viaje de verano con la menor ANCC. Arguyó que los correos electrónicos remitidos en unas cinco (5) ocasiones versaban sobre la autorización del mencionado viaje con la menor ANCC, la adquisición de los pasajes y las reservaciones. Señaló que la señora CRUZ WATSON solicitó la custodia monoparental alegando que éste utiliza el ejercicio de la *custodia compartida* para maltratarla psicológicamente. Empero, que de la moción presentada por la señora CRUZ WATSON no surge que formuló alegación alguna en torno a la ocurrencia de cambios sustanciales en las circunstancias pertinentes al bienestar del menor ANCC; se limitó a enfocar las complicaciones de su tercer parto; y se encontraba en extrema ansiedad, estrés, preocupación y emocionalmente comprometida con todos los eventos que le rodeaban en ese momento. Adujo que, por lo anterior, dicho petitorio está carente de toda alegación sobre (1) porqué resultaba en el mejor interés de la menor ANCC un cambio de custodia; y (2) sin que se hubiese celebrado una audiencia, se ordenó a la Unidad de Relaciones de Familia y Asuntos de Menores a realizar un estudio social sobre custodia monoparental disponiendo que, de ser necesario, se coordinen evaluaciones psicológicas y psiquiátricas a la menor ANCC.

Por su parte, la señora CRUZ WATSON en su oposición alegó que no solo se trata de las comunicaciones entre marzo y abril de 2024 por correo electrónico, sino que se trata de un patrón existente por parte del señor CORRETJER REYES sobre maltrato y enajenación parental. Expuso que el tribunal tuvo ante su consideración alegaciones sobre el mencionado patrón que no son vacías, especulativas ni frívolas, pues ya se habían escuchado

sobre ellas, pero al alcanzarse un acuerdo entre las partes, estas no fueron tomadas en consideración.

En este caso, surge del expediente que la menor ANCC ha sido evaluada en múltiples ocasiones. Por primera vez, en el **año 2016**, fue entrevistada y evaluada por la señora CARMEN E. CRUZ NARVÁEZ, trabajadora social de la Unidad Social de Relaciones de Familia. El **10 de febrero de 2017**, rindió su *Informe Social Forense* en el cual recomendó que no se autorizara la relocalización de la menor ANCC, y **se otorgara la *custodia compartida***.

La segunda intervención fue para el año 2018, por la DOCTORA UNDERWOOD quien el **4 de junio de 2018** suscribió una *Evaluación Psicológica Confidencial* en la cual evaluó el desarrollo social y lenguaje de la menor ANCC para determinar si estaba afectada por el divorcio y las relaciones conflictivas entre sus progenitores. Comprobó que la menor ANCC estaba emocionalmente estable y mantiene una buena relación y apego con ambos progenitores. Así como, que **pese a la relación conflictiva y poca comunicación han mantenido a su hija ANCC al margen de la situación. Exhortó, entre otras cosas, a los progenitores a participar de terapia de familia para desarrollar destrezas efectivas de comunicación, solución de problemas, manejo de conflictos y toma de decisiones relacionadas a los asuntos pertinentes a su hija menor ANCC**.

Una tercera ocasión, por la señora MARÍA DENIZ ORTIZ DÍAZ, trabajadora social con práctica forense. El **11 de mayo de 2021**, proveyó su *Informe Pericial de Evaluación de Alegaciones de Abuso Sexual*. Entre otros asuntos, **aconsejó que la señora CRUZ WATSON considere la posibilidad de participar de un proceso psicoterapéutico para atender su victimización; ambos progenitores sean referidos a algún proceso de psicoterapéutico para mejorar sus relaciones, para que las misma sean cordiales por el mejor bienestar de su hija ANCC; y de ser necesario,**

referir a algún proceso de coordinación parental, en el cual sean apoyados a realizar acuerdos y mejorar su comunicación.

Posteriormente, una cuarta evaluación, también durante el año 2021, por la señora ELIZABETH LITSKY COLLAZO, trabajadora social de la Unidad Social de Relaciones de Familia. El 29 de octubre de 2021 suministró su *Informe Social Forense* en el cual consideró que debía continuar la *custodia compartida;* las partes iniciaran un proceso de coordinación de parentalidad sugiriendo el Instituto de Terapia Familia de Rita Córdova; y no se desprendía que los progenitores estuviesen incurriendo en enajenación parental.

Por ende, el 18 de abril de 2023, se dictó *Resolución* en la cual el foro recurrido adujo que por siete (7) años, ha tenido que participar de la toma de decisiones de un sinnúmero de asuntos que les competen a los progenitores dado que estos no se comunican efectivamente y están impedidos de tomar una decisión conjunta. A tales efectos, **impuso un término de veinte (20) días para informaran el nombre del coordinador, o, de no existir consenso, sugirieran tres (3) alternativas de coordinadores de parentalidad para que el mismo Tribunal lo escogiera.**

Según mencionado, el Código Civil de Puerto Rico de 2020 dispone claramente los criterios que podrían impedir la adjudicación de una *custodia compartida*. La señora CRUZ WATSON argumentó que la situación entre los progenitores no favorece sostener más la concesión de la *custodia compartida* por la alegada violencia doméstica. Más, del expediente **no** surge que la señora CRUZ WATSON haya obtenido una orden de protección al amparo de la Ley 54-1989. En la ocasión en que obtuvo una orden de protección **ex parte**, al celebrarse la audiencia final, la misma no fue expedida por no haberse probado los elementos constitutivos de violencia doméstica.[48] Por lo que, dicho criterio no es de aplicación. Tampoco los "constantes" correos

---

[48] Apéndice de la *Petición de Certiorari*, págs. 361- 362.

electrónicos suscritos por el señor **CORRETJER REYES** concernientes a procurar la autorización de un viaje de verano, que debe planificarse con tiempo, constituyen actos de maltrato o manipulación.[49]

En cuanto a la comunicación entre los progenitores de ANCC, en varios de los informes rendidos por las distintas especialistas, se recomendó **terapia familiar,** así como el nombramiento o designación de un(a) **coordinador de parentalidad.** Pese a dichas sugerencias, **no** se desprende del expediente que las partes hayan sugerido un(a) coordinador de parentalidad o que el tribunal primario lo haya designado aun cuando el término concedido venció en mayo de 2023.[50]

En este caso, aun cuando la señora **CRUZ WATSON** arguyó que debe concederse una *custodia monoparental,* entendemos que no ha colocado al foro recurrido ni este tribunal revisor en posición de asumir que las alegadas actuaciones del señor **CORRETJER REYES** hayan afectado o podrían afectar a la menor ANCC a tal magnitud que se dificulte su crianza bajo la *custodia compartida.* En fin, a nuestro entender, no se cumplen los criterios necesarios para proceder con la revisión de la *custodia compartida* para la concesión de una monoparental. En este caso, existe una *custodia compartida* de la menor ANCC desde marzo de 2016; los múltiples informes han favorecido la misma; y no se han hallado actuaciones enajenantes o que interfieran con la relación del otro progenitor.

Permitir que la menor ANCC sea sometida a un cúmulo de pruebas adicionales, puede afectarla emocionalmente, cuando en realidad **no** son necesarios en este momento. Con demasiada frecuencia, las controversias sobre *custodia* se convierten en batallas encarnizadas entre los progenitores y en lidia pericial interminable, al punto que todos los involucrados pierden

---

[49] Surge de los anejos que desde el día siguiente del alumbramiento (12 de marzo de 2024) de su tercer hijo, la señora **CRUZ WATSON** respondió a los correos electrónicos sobre asuntos escolares de la menor ANCC. Lo cual denota que los correos electrónicos concernientes al viaje no fueron atendidos por la señora **CRUZ WATSON**. Véase, Apéndice de la *Petición de Certiorari,* págs. 286- 301.

[50] Esta determinación judicial dispuesta el 18 de abril de 2023 es a instancias de un escrito del señor **CORRETJER REYES**.

de perspectiva que quien más se perjudica es aquel a quien se desea proteger.[51] Así, colegimos que el tribunal incidió en el primer error.

En su segundo señalamiento de error, el señor **CORRETJER REYES** adujo que erró el foro primario al denegar la solicitud de requerirle a la señora **CRUZ WATSON** el cumplimiento de la *Resolución* emitida el 18 de abril de 2023, a los efectos de seleccionar un(a) Coordinador de Parentalidad. Ello, a pesar de que se ha reconocido la utilidad y conveniencia de designar para supervisar e identificar donde yace el problema de comunicación entre los progenitores y, de esta forma, reducir la judicialización de la atención de los asuntos usuales al ejercicio de la *custodia compartida*. Enfatizó que el asunto medular a tratar no es la *custodia compartida*, sino la difícil comunicación entre los progenitores, y no se debe desperdiciar la valiosa y accesible oportunidad de superar la deficiencia en la comunicación, así como evitar la judicialización de los asuntos al utilizar al coordinador que establezca los límites y parámetros a las interacciones que tendrían los progenitores.

La señora **CRUZ WATSON** señaló que, en su discreción judicial, el tribunal recurrido afirmó con la denegatoria de la *Moción de Reconsideración* presentada por el señor **CORRETJER REYES**, que el problema de las partes no es de falta de comunicación, sino que existen alegaciones y prueba del uso de las comunicaciones como vehículo para la enajenación parental y el maltrato psicológico tanto a la señora **CRUZ WATSON** como a la menor ANCC.

Concretamos que, en este caso, ello no surge de la determinación del tribunal de instancia y éste no agotó todos los remedios que tenía a su disposición para solucionar el problema principal entre los progenitores de ANCC: la comunicación para la toma de decisiones respecto a su hija. Ello, procedía que se hiciera cumplir lo recomendado en múltiples ocasiones, en los *Informes*, lo concerniente a la terapia familiar o designación de un(a) coordinador de parentalidad y el dictamen judicial de abril de 2023.

---

[51] *Pena v. Pena*, 164 DPR 949 (2005).

Recordemos, que no debemos ignorar la realidad de que evaluar nuevamente a la menor ANCC y cambiar su rutina, cuando ya se ha repetido en varias ocasiones, conlleva una carga emocional que afecta tanto a las partes, pero sobre todo a la menor involucrada. Como mencionamos antes, la menor ANCC ha sido observada por varios especialistas de la conducta humana, de abuso sexual y de la salud por alegaciones de maltrato y enajenación parental, entre otros, quienes han rendido sus respectivos *Informes*. Evidentemente, la menor ANCC ha sido evaluada extensamente. Ante todo, no procedía ordenar una nueva evaluación sobre custodia monoparental. Sino seleccionar un(a) Coordinador de Parentalidad o terapista familiar, dar término para iniciar el proceso y de esa manera intentar resolver la controversia principal entre las partes, en aras del interés óptimo de la menor ANCC. Deducimos que le asiste la razón al señor **CORRETJER REYES**.

En su tercer señalamiento de error, el señor **CORRETJER REYES** argumentó que la *Orden* emitida el 25 de abril de 2024 en la cual se le prohibió hablarle, o permitir que terceros le hablen a la menor ANCC de ningún viaje hasta tanto, la señora **CRUZ WATSON** o el Tribunal lo haya autorizado, se basó en la alegación formulada por la señora **CRUZ WATSON** de que éste informó sobre el viaje a la menor para ilusionarla con el propósito de presionar su autorización.

Por su parte, la señora **CRUZ WATSON** manifestó que la determinación se basó en la prueba documental de las admisiones del señor **CORRETJER REYES** que demostraron que en una fecha en la que éste aún no había solicitado la autorización del viaje, ya se le había comentado a la menor ANCC de los lugares y con quienes iría. Ello, creando una presión indebida al otro progenitor, quien, de oponerse, se enfrenta al disgusto, sentimiento de coraje, y mecanismo de enajenación al quedar "demonificado" como causante de que la menor ANCC no disfrutaría del mismo.

De un análisis de las comparecencias del señor **CORRETJER REYES**, es de notar que éste explicó que la menor supo del viaje por una prima, quien también es su compañera de clases en el colegio al que asisten. Entendemos que la señora **CRUZ WATSON no** presentó evidencia alguna que demostrara que el señor **CORRETJER REYES** fue quien le comunicó a la menor ANCC sobre el viaje, y ello fue con la intención de antagonizarla como madre o para presionarla a que lo autorizara. Concluimos que el tribunal cometió el error.

En su cuarto y último señalamiento de error, el señor **CORRETJER REYES** razonó que la sanción impuesta de $350.00 a favor de la señora **CRUZ WATSON** por reservar y adquirir los pasajes previo a obtener su autorización o del Tribunal es contraria a derecho. Toda vez que no había disposición judicial alguna que se haya violentado.

De una lectura de la *Resolución* decretada el 14 de febrero de 2024, denotamos que no hay una advertencia que disponga que, de adquirir los pasajes con anterioridad a la autorización del otro progenitor, o en su defecto, del Tribunal, **se le impondría una sanción económica**. El inciso cuatro (4) de la *Resolución* lee:

> 4. Se advierte que, de comprar pasajes previos a obtener el consentimiento de la otra parte para que la menor viaje, **se arriesga a perder el dinero gastado**. El Tribunal no va a considerar que los pasajes están comprados al momento de atender una solicitud para que se autorice un viaje.
> (Énfasis nuestro).

De igual manera, es importante hacer referencia al inciso cinco (5) referente a una sanción por violación al inciso 2. El Tribunal especificó:

> 5. Cualquier incumplimiento con la Orden de este Tribunal, **sobre las comunicaciones durante un viaje o periodo de navidad o verano detallado en el inciso 2, conllevará una sanción no menor de $500.00** y la entrega inmediata de la menor al otro padre.
> (Énfasis nuestro).

Para un mejor entendimiento, el inciso dos (2) de la referida *Resolución* dispone:

> 2. Se les reitera que para cualquier salida de Puerto Rico, que no sea una visita a la familia materna en Carolina del Norte, se requiere autorización de ambas partes, o en con defecto, el Tribunal.

El dictamen claramente lo que apercibe es que se arriesga a perder el dinero gastado en los pasajes. Por lo tanto, en esta ocasión, no correspondía sancionar económicamente al señor **CORRETJER REYES** por la adquisición de los pasajes previo a la autorización de la señora **CRUZ WATSON** o del Tribunal. Ello, pues ante la falta de notificación de que podía ser sancionado económicamente por la adquisición de los pasajes aéreos para el viaje familiar con la menor ANCC, no podía imponerse dicha penalidad. En la alternativa, si hubiese existido la correspondiente advertencia de sanciones económicas por la adquisición de los pasajes, el Tribunal venía obligado a, como primera opción y al ser el primer incumplimiento, apercibir a la representación legal del señor **CORRETJER REYES**; concederle la oportunidad de responder y corregir su actuación. Si estos no respondían, entonces el Tribunal procedía a imponer una sanción ante el incumplimiento. Coincidimos que el foro primario incurrió en error.

- IV -

De conformidad a los fundamentos expuestos, *expedimos* el auto de la *Petición de Certiorari* instada el 2 de agosto de 2024 por el señor **CORRETJER REYES**, y *revocamos* las *Ordenes* impugnadas. (A) Se ordena a los señores **CRUZ WATSON** y **CORRETJER REYES** a seleccionar un(a) Coordinador de Parentalidad dentro del término perentorio de **veinte (20) días** a partir de la notificación de esta *Sentencia*. Si no cumplen, el Tribunal deberá seleccionar un(a) Coordinador de Parentalidad y conceder plazo de diez (10) días para iniciar el proceso. (B) Se modifica la *Orden* pronunciada el 25 de abril de 2024, a los efectos de incluir a la señora **CRUZ WATSON** en la prohibición de hablarle o permitir que terceros le hablen a la menor ANCC de ningún viaje hasta tanto el otro progenitor o el Tribunal haya autorizado, so pena de sanciones. A estos efectos, los señores **CRUZ WATSON** y **CORRETJER REYES** dispondrán de un plazo de **siete (7) días** para expresar su autorización sobre un viaje, transcurrido el mismo se acudirá ante el Tribunal de Primera Instancia. (C)

Se deja sin efecto la sanción de $350.00 impuesta al señor **CORRETJER REYES** a favor de la señora **CRUZ WATSON**. (D) Se deja sin efecto la *Orden a la Unidad Social* intimada el 30 de abril de 2024 requiriendo un estudio social. Devolvemos el caso al foro de origen para la continuación de los procedimientos de forma consistente con nuestros pronunciamientos.

Al amparo de la Regla 35 (A)(1) de nuestro Reglamento, el Tribunal de Primera Instancia puede proceder de conformidad con lo aquí resuelto, sin tener que esperar por el recibo de nuestro mandato.[52]

**Notifíquese inmediatamente**.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

La Jueza Cintrón Cintrón concurre y disiente con el resultado mediante opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[52] Regla 35 (A)(1): "La presentación de una solicitud de *certiorari* no suspenderá los procedimientos ante el Tribunal de Primera Instancia, salvo una orden en contrario expedida por iniciativa propia o a solicitud de parte por el Tribunal de Apelaciones. La expedición del auto de *certiorari* suspenderá los procedimientos en el Tribunal de Primera Instancia, **salvo que el Tribunal de Apelaciones disponga lo contrario**." 4 LPRA Ap. XXII-B R. 35.

| | | |
|---|---|---|
| **COREY REBECCA CRUZ WATSON**<br><br>Recurrida<br><br><br>v.<br><br>**ALBERTO CORRETJER REYES**<br><br>Peticionario | KLCE202400851 | ***CERTIORARI***<br>*procedente del<br>Tribunal de<br>Primera Instancia,<br>Sala Superior de<br>San Juan*<br><br>Civil Núm.:<br>**K DI2016-0176**<br><br>Sobre: Divorcio<br>(Custodia) |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Pagán Ocasio y la Juez Barresi Ramos.

## VOTO CONCURRENTE Y DISIDENTE DE LA JUEZA CINTRÓN CINTRÓN

Respetuosamente concurro con la determinación tomada por la mayoría de este Panel. De los hechos que presenta el caso y los documentos anejados al expediente resulta evidente que el curso de acción que conlleva la revocación de los dictámenes emitidos por el TPI no es del todo adecuado. Entiendo que este Foro revisor debe de atender con perceptibilidad la controversia planteada.

Es innegable que en la etapa procesal en la que se encuentra el caso y ante la totalidad de las circunstancias, no es el momento adecuado para someter a la menor ANCC a una nueva evaluación psicológica con el propósito de hacer una determinación de custodia monoparental. Ahora bien, no es menos cierto que lo señalado por la señora Cruz Watson sobre la conducta desplegada por el señor Corretjer Reyes con la constante emisión de correos electrónicos resalta lo que podría constituir elementos que en una futura ocasión permitan dicho curso de acción. Sin embargo, entiendo que lo adecuado en este momento es la selección del Coordinador de



Parentalidad, conforme fuera dispuesto por el TPI en la *Resolución* del 18 de abril de 2024.

En cuanto a la determinación sobre comunicarle a la menor antes de que se autorice viaje alguno los detalles de este, entiendo que el dictamen del TPI debe confirmarse. Del expediente ante nuestra consideración se desprende que la circunstancia que hoy nos atañe se relaciona a comunicaciones del señor Corretjer Reyes con la menor y no así de la señora Cruz Watson.

Corresponde al TPI continuar con el manejo de las incidencias de la presente causa teniendo siempre como norte los mejores intereses de la menor ANCC.

En San Juan, Puerto Rico, a 27 de noviembre de 2024.

Sol de Borinquen Cintrón Cintrón
Jueza de Apelaciones